STEPHENS *et al. v.* THE MAYOR AND COUNCIL OF ALBANY

1. Where, in the city of Albany, a registration list was opened on the first Monday in October and closed on the first Monday in November, for the election of mayor and council, and on the 4th day of December that body ordered an election to be held on the 6th of January to ascertain whether two thirds of the qualified voters of the city desired certain bonds to be issued for erecting water-works, and the election was held but many persons were not allowed to vote because their names did not appear on the registration list which had closed in November, the election was void.

(a) The requirement as to the registration of voters in acts 1872, p. 123, does not apply to special elections in Albany of the character of the one in question. The submission should have been to all the qualified voters of the city.

2. If the general law of the State as to municipal elections to determine whether bonds shall be issued, be applied to this case, the mayor and council should have either ordered a new registration and given all the qualified voters a reasonable opportunity to qualify themselves as electors, or allowed them to vote without registration.

March 10, 1890.

Injunction. Municipal corporations. Albany. Elections. Constitutional law. Before Judge Bower. Dougherty county. At chambers, January 25, 1890.

Reported in the decision.

J. W. Walters and R. Hobbs, for plaintiffs.

W. T. Jones and W. E. Wooten, for defendant.

Simmons, Justice.

It appears from the record in this case that an election was held under the charter of the city of Albany for mayor and aldermen, on the first Monday in December, 1889. The qualifications for voters at that election are prescribed by the charter. Acts 1872, p. 123. These qualifications are as follows: "All persons shall be qualified to vote at elections for mayor and aldermen in the city of Albany who are citizens of the United States, have resided in this State for one year immediately preceding the election, and continue to do so up to the time of election, and within the corporate limits of said city for one month immediately preceding the day for the opening of the registration list, and the month intervening from said opening to the day of election continuously, who have attained the age of twenty-one years, and who have paid all taxes assessed against them by the ordinances of said city, and which they have had an opportunity of paying; who shall have made all returns required by the ordinances, and

have been registered according to law." The act then goes on to provide as to the registration of voters, and declares that no person shall be entitled to register who has not been a resident within the corporate limits of said city for one month immediately preceding the opening of the list. It provides that the list for the registration of voters shall be opened on the first Monday in October, and shall be kept open every day for certain hours, Sundays excepted, until five o'clock P. M., until the first Monday in November ensuing, when it shall be finally and absolutely closed.

It appears from the record that in pursuance of this act, a registration list was opened on the first Monday in October, and closed on the first Monday in November, and that 419 persons registered. The election for mayor and aldermen was held on the first Monday in December thereafter. On the 4th day of December, 1889, the mayor and aldermen ordered an election to be held on the 6th of January, 1890, to ascertain whether two thirds of the qualified voters of said city desired $50,000 of bonds to be issued by the city for the purpose of erecting a system of public water-works. The election on this issue was held at the time appointed, and when the votes were consolidated, it appeared that 251 votes were cast for the bonds, and that 99 votes were cast for no bonds. It further appears that, prior to and on the day of this election, the mayor and aldermen instructed the managers of the election to receive the vote of no person unless he had registered as a voter in October of the preceding year. It also appears that a great number of persons offered to vote, and that their votes were refused by the managers, and that a great many others desired to vote but did not attend the polls, on account of the instructions of the mayor and aldermen to the managers not to receive any votes except from persons who had registered for the preceding election. After

the votes were consolidated and the result announced in favor of the bonds, it appears that the mayor and council were preparing to issue the same and put them on the market, when Stephens and others filed a petition to the judge of the superior court praying for an injunction against the mayor and aldermen, and asking that they be restrained from issuing said bonds and placing them upon the market. In this petition the foregoing facts were set out. It was also alleged therein that the election was illegal, (1) because the mayor and council had no authority to issue orders to the managers of election not to receive the vote of any person unless he had been registered in the previous October; (2) because there was no law authorizin g registration in the city of Albany for a special election of this character; that the only law authorizing registration applied solely to the election for mayor and aldermen; and (3) that if the law governing registration in the city of Albany applied to special elections of this character, there should have been a new registration thereunder, because the holding of the election under a registration which closed in the preceding November debarred and disfranchised 700 qualified voters residing in the city, and thereby made the election illegal and void, and that a sufficient number of the voters thus disfranchised would have voted against the bonds, to have prevented their issuance. There were other allegations contesting the fairness of the election, the legality of votes, etc., which under our view of the case it is unnecessary to notice. The judge of the superior court refused to grant an injunction, and the complainants excepted.

1. We think that, under the facts disclosed by the record, the judge erred in refusing to grant the injunction prayed for. In our opinion, the act of 1872 (*supra*), requiring a registration of voters, does not apply to special elections of the character now under considera-

tion, but by its terms applies solely to elections for mayor and aldermen. In defining the qualifications of voters (§2), it declares that "all persons shall be qualified to vote at *elections for mayor and aldermen* in the city of Albany, who are citizens,"·etc. That it was clearly the intention of the legislature to restrict the registration provided for in this act to elections for mayor and aldermen, is also apparent from the last section thereof (§9), which declares that "the mayor and council of the cities of Atlanta and Newnan shall have power to provide for the registration of voters prior to *any and all municipal elections* in said cities, to make all needful rules and regulations for the same, and require that no person be permitted to vote unless registered as thus provided." It will be observed that in this section the city of Albany is not mentioned; which shows to our mind that it was not the intention of the legislature to confer upon the city of Albany the power granted to the other cities named in the act, to require registration for all municipal elections. If we are correct in the view we take of this act, it follows that the instructions given by the mayor and aldermen to the managers of the election, not to receive the vote of any person who had not registered in October, were illegal and an usurpation; and that the election held thereunder was void. There being no law requiring a registration of voters for this election, the question should have been submitted to all the qualified voters of the city.

2. But it is claimed by the able counsel for the defendants in error that, although the act may be silent as to the registration for elections other than those for mayor and aldermen, the general law of the State as to elections by municipalities to determine whether bonds shall be issued, provides that such elections shall be held "by the same persons and in the same manner, under the same rules and regulations, that elec-

tions for officers of said . . municipality . . are held " (Code, §508j); and that as elections for municipal officers in the city of Albany are held under a law requiring the voters to be registered, the general law required them to be registered in this special election. Admitting this position to be sound, and applying the general law to the facts of this case, we would still hold that the election under consideration was illegal and void. The constitution prescribes that no municipality shall issue bonds " without the assent of two thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law." Who are the qualified voters of this municipality ? The constitution, article 2, §1 (Code, §5032), defines who are qualified voters : " Every male citizen of the United States (except as hereinafter provided) twenty-one years of age, who shall have resided in this State one year next preceding the election, and shall have resided six months in the county in which he offers to vote, and shall have paid all taxes which may hereafter be required of him and which he may have had an opportunity of paying, agreeably to law, except for the year of the election, shall be deemed an elector," etc. The charter of Albany, in prescribing who shall be qualified voters in that city, requires that they shall be citizens of the United States ; that they shall have resided in this State for one year immediately preceding the election, and continued to do so up to the time of election, and within the corporate limits of the city for one month immediately preceding the day for the opening of the registration list, and the month intervening from such opening to the day of election ; that they shall have attained the age of twenty-one years, and shall have paid all taxes assessed against them by the ordinances of the city and which they have had an opportunity of paying ; that they shall have made all returns

required by the ordinances and have been registered according to law. Acts 1872, *supra*. The legislature has the right to authorize and require the registration of voters in a town or city, but the regulations prescribed must be " reasonable and impartial and calculated to facilitate and secure the constitutional right of suffrage, and not to subvert, or injuriously, unreasonably or unnecessarily restrain, impair or impede the right." Daggett *v.* Hudson, 3 N. E. Rep. 538 (Ohio); Capen *v.* Foster, 12 Pick. 485; State *v.* Corner, 3 Am. State Rep. 267, s. c. 22 Neb. 265; State *v.* Butts, 2 Pacific Rep. 618 (Kansas); People *v.* Canaday, 73 N. C. 198, s. c. 21 Am. Rep. 465; McCrary on Elections, §95 *et seq.*; Paine on Elections, §340 *et seq.*; Cooley Const. Limitations, *602.

Applying these principles to the facts of this case, let us see whether the regulations for registration for this special election were reasonable and impartial, and calculated to facilitate the right of suffrage, and not to unnecessarily restrain, impair or impede it. The registration upon which this special election was held was opened on the first Monday in October, for the purpose of ascertaining the qualified voters in the city of Albany who were entitled to vote for mayor and aldermen in the December following, and was closed on the first Monday in November. The law authorizing this registration required that before any person could register, he must have been a resident of the city for one month immediately preceding the day for the opening of the registration list, and the month intervening from said opening to the day of election continuously. So it will be seen that under this regulation, no person could register or vote who did not reside in the city of Albany on the first Monday in September, 1889, and no person could register after the first Monday in November, 1889. There were at least two months from the closing of the

registration until this special election was had. An elector who moved to the city of Albany after the first Monday in September, 1889, could not register or vote at the election of the mayor and council in December, and therefore could not vote in this special election; and no person who became of age after the first Monday in November was allowed to vote at the special election. It frequently happens that in an election for mayor and council there is no opposition, or a compromise ticket is run; and the voters feeling no special interest in that election neglect to register, as was the case here, for the bill alleges that upwards of 700 voters failed to register for the December election. When, however, it is proposed to tax the people of a city, every voter who has property or who expects to own property is interested to the amount of taxation he may be required to pay. When his pocket and his interest are thus involved, he usually wishes to vote; and any law, rule or regulation which does not give him a reasonable opportunity to qualify himself as an elector is void. While the registration under consideration may have been right and proper as applied to the election for mayor and aldermen, yet as applied to this special election, after such an unreasonable length of time had elapsed between the closing of the registration list and the latter election, it was illegal and improper and rendered such special election void. If the mayor and aldermen had the power and authority to order this special election under the old registration, two months after the registration had closed, what would prevent them from ordering it six months or eleven months thereafter? Is the registration list which is taken for a special purpose once a year, to govern and control the qualified voters of the city for a whole year, and to determine their right to vote upon questions which may not have been anticipated at the time of such registration? It seems to us that if

the legislature or the mayor and aldermen have authority to do this, they would have equal authority to designate who the electors should be, whether they should be old, or middle-aged, or young men. The true law is that whenever a registration is ordered, it should give the voters an opportunity, as near the day of election as practicable, for qualifying themselves as electors. All the authorities concur in holding that if the length of time between the closing of the registration and the election is unreasonable, the election should be held void. In the case of The State v. Butts, *supra*, Judge Brewer held that for the registration to close ten days before the election was not an unreasonable time. His opinion is able and well-considered, and we think lays down the correct rule as to the reasonableness or unreasonableness of registration acts.

We hold, therefore, that the act requiring the registration of voters in the city of Albany applies only to elections for mayor and aldermen; and the question of the issue of these bonds not having been submitted to all the qualified voters of the city, the election was illegal and void. And we think that, to apply the general law in the code to this election, the mayor and aldermen should either have ordered a new registration and given all the qualified voters a reasonable opportunity to qualify themselves as electors, or else should have allowed all the qualified voters to vote without registration.                          *Judgment reversed.*