FRANKLIN *v.* HARPER *et al.*

780

No. 16758.  September 16, 1949.

*Franklin H. Pierce,* for plaintiff.

*Congdon, Harper & Leonard,* for defendants.

*Heyman, Howell & Heyman, Morris B. Abram, Sutherland, Tuttle & Brennan,* for persons at interest, not parties.

784

ALMAND, Justice. (After stating the foregoing facts.) ■ The plaintiffs contend that the defendant cannot question the constitutionality of the Voters' Registration Act, in that in the enforcement of said law no interest or right of the latter is affected. Under the provisions of the act, the Board of County Registrars, charged with enforcement of the act, are to be compensated out of county funds, and the defendant, a member of the Board of Commissioners of Roads and Revenues, by virtue of his office is charged with the duty of paying out such funds only for purposes provided by law. If a chairman of such board issues a warrant for an unlawful purpose upon which public funds are paid, he would be personally liable. If the Voters' Registration Act is unconstitutional, though in the form and name of law, it "is in reality no law, and confers no authority upon, and affords no protection to, an officer acting thereunder." *Dennison Mfg. Co.* v. *Wright,* 156 *Ga.* 789 (4a) (120 S. E. 120). In *McCants* v. *Layfield,* 149 *Ga.* 231 (2) (99 S. E. 877), this court held: "Where a mandamus proceeding is instituted by one claiming the office of county treasurer, for the purpose of compelling the county tax-collector to pay over the county funds in his hands arising from taxation, the tax-collector may defensively set up the unconstitutionality of the act naming the petitioner as treasurer of the county. He is entitled to an adjudication of that question, and is not required to bring quo warranto for the purpose of inquiring into the title of the person claiming the office of county treasurer." In the opinion, Mr. Justice Gilbert, speaking for the majority of the court, quoted with approval from 18 R. C. L. 112, § 24, as follows: "The better rule, however, seems to be that though all ministerial officers may not be permitted to raise the question as to the constitutionality of a statute imposing upon them the duty sought to be enforced, yet where it is sought to compel State officers, charged with the general duty of keeping and disbursing the funds, to comply with a statute providing for a disbursement thereof, such officers may raise the question of the constitutionality of the particular statute providing for the distribution sought to be coerced." Pp. 238-39.

We therefore hold that the defendant had such an interest as would authorize him to question the validity of the Voters' Reg-

istration Act under which the plaintiffs claim they are acting and contend that the defendant is under a duty to sign warrants for their compensation fixed by virtue of said act.

■ By general demurrers the defendant makes a general attack on the Voters' Registration Act of 1949 as a whole, and does not attack any specific portion thereof; charging that the act is violative of certain specified provisions of the Federal and State Constitutions. We therefore turn to the act itself as a whole, to ascertain if it is subject to the attacks made.

Section 55 declares that the intent of the General Assembly is to provide by this act "for a new and exclusive method of qualifying voters, such revision being necessary in order to make the laws of this State conform to the requirements of the Constitution of Georgia adopted in the year 1945." Section 1 provides that from and after the effective date of the act no person shall be permitted to vote in any election in this State for presidential electors, members of Congress, United States Senators, Governor, Lieutenant-Governor, State House officers, members of the General Assembly, county officers, justices of the peace, or members of county boards of education, unless such person has been registered and qualified as provided in this act. Section 3 provides that the first registration list shall be prepared in 1950, and that the process of registration shall start immediately. It is provided in section 4 that the registration shall be permanent, but electors are required to maintain their status as qualified voters by the exercise of their franchise once every two years. Section 6 provides that the judge of the superior court of each county shall quadrenially appoint three upright and intelligent citizens of the county as a Board of Registrars from a list of six names recommended by the grand jury; the judge having the right to remove a member of the board on recommendation of the grand jury or upon proof of failure to discharge his duties, or because of unfitness of any member of the board. The act provides that the registrars shall take an oath; and under section 9 the tax commissioner or tax collector of the county shall be a deputy to the Board of Registrars. Section 11 provides a form of registration card whereby the applicant under oath is required to state that he is a citizen of the United States; state his age; that he has resided for six

months in the county; that he possesses the qualifications of an elector required by the Constitution; and that he is not disfranchised by reason of any offense committed against the State. On this card the deputy or registrar certifies: (1) that the applicant could or could not intelligibly read a specified paragraph of the Constitution of Georgia or the United States; (2) that the applicant wrote or could not write a specified paragraph of the Constitution legibly; (3) that the applicant stated that due solely to physical infirmity he could not read, and a specified paragraph of the Constitution was read to him, and he explained it intelligibly, or could not explain it intelligibly; (4) that the applicant was served with notice to appear before the Board of Registrars on a stated date.

Sections 15, 16, and 17 provide how the applicant shall apply for registration, and the manner of filling out the cards and entry of the answers by the deputy or registrar. If the applicant states that he cannot read, and his inability to do so "is not due to physical infirmity but that he desires to qualify as a voter by reason of his good character and his understanding of the duties and obligations of citizenship under a republican form of government, the fact that he cannot read and write should be noted on the card." The registration cards are then turned over to the registrars for their consideration. Section 18 provides that a failure on the part of the applicant to disclose information sought by direct questions in connection with his application, or the giving of false information, shall be cause for the rejection of the application by the registrars on their own motion. Section 19 provides that all decisions of the registrars are appealable to the superior court.

Section 20 provides that, as the cards are turned over to the registrars, they shall proceed to a consideration of the application in the following manner: (1) Where the application is on the basis of literacy, and it appears that the applicant read the selected portion of the Constitution intelligibly, and wrote it legibly, or that by reason of physical disability he could not read it, but was able to interpret it reasonably when read to him, and the card shows no reason for disqualifying him for noncompliance with the law, the registrars shall pass an order declaring the applicant prima facie qualified. "The interpre-

tation in this case shall be in the applicant's own words, giving words the significance ordinarily attached to them by laymen of average intellect and attainments." (2) In those cases where the applicant applies for qualification solely on the basis of his good character and his understanding of the duties of citizenship under a republican form of government, he shall be notified in writing to appear before the full Board of Registrars, and shall at that time be subjected to an examination as to his or her qualifications, to be conducted in accordance with the procedure hereinafter prescribed (in section 21). (3) In cases arising under the preceding paragraph and in all cases arising under this act where the applicant is required to be served with a notice of a hearing, unless otherwise provided, said notice shall specify a day not less than one, nor more than ten days, after the date of the notice. The notice may be served by mailing same to applicant at the address given on his application card. (4) Failure to appear at the time specified for the hearing of an application is declared to be cause for denying the application. However, the applicant may be reinstated on motion by him, if he can prove that he was in fact not served with notice.

Section 21 provides that the examination which the registrars shall submit to those persons who claim the right to register and vote on the basis of good character and understanding of the duties of citizenship under a republican form of government shall be based upon a standard list of questions. The registrars shall orally propound to the applicant the thirty questions on the standard list set forth in section 22. If the applicant correctly answers ten of these questions the registrars shall enter an order declaring him to be prima facie qualified; if he cannot correctly answer ten of the thirty questions, an order shall be entered rejecting his application.

Section 22 provides a standard list of questions, to be propounded only to those applicants who claim the right to qualify on the basis of good character and understanding of the duties of citizenship. Some of these questions are: Who is President of the United States? What is the President's term of office? If the President dies, who succeeds him? How many Senators are there from Georgia? Who is the Governor of Georgia? Who is the Chief Justice of the Supreme Court of Georgia? and other questions of like import dealing with civics and government.

Sections 24 to 46 inclusive of the act deal with the revision of registration lists; how persons becoming disqualified subsequent to registration may be dropped from the list; preparation of lists of those prima facie qualified to vote; use of lists at elections; procedure for having names placed on lists; provision that lists are open to public inspection. Section 47 provides for compensation of registrars, to be fixed by the judge of the superior court, and paid by the "county commissioners, or that person, or those persons, exercising the functions of county commissioners, from the county treasury. All payments hereunder shall be made in the usual manner county bills are paid." Sections 49 through 51 prescribe penalties for specified violations of the act.

The rule which governs us in the consideration of this question is succinctly and plainly stated in *Miller* v. *Head*, 186 *Ga.* 694, 708 (198 S. E. 680), as follows: "Accordingly, with respect to this phase of the case, we shall consider only the general question whether the act is invalid as a whole for any of the reasons urged, without adjudication as to any particular sections or parts of it, except as related to the general question. . . This statement, however, is not to be taken as an intimation that other separate portions may or may not be unconstitutional." We are here concerned only with the validity of the voters' registration statute as a whole. In this case, an omnibus attack on the act will fail unless the statute is invalid in every part for some reason asserted. *Stegall* v. *Southwest Georgia Regional Housing Authority*, 197 *Ga.* 571 (1), 548 (30 S. E. 2d, 196); *Krasner* v. *Rutledge*, 204 *Ga.* 380, 382 (49 S. E. 2d, 864).

■ Though no contention is made that this act or any section thereof contravenes the provisions of the Constitution relative to the qualification of voters, reference to those provisions indicates that the legislative purpose is to provide the necessary machinery to carry out these provisions, which are as follows: "Every citizen of this State shall be entitled to register as an elector, and to vote in all elections in said State, who is not disqualified under the provisions of Section II of Article II of this Constitution, and who possesses the qualifications prescribed in Paragraphs II and III of this section or who will possess them at the date of the election occurring next after his registration.

and who in addition thereto comes within either of the classes provided for in the two following subdivisions of this paragraph:

"1. All persons who are of good character and understand the duties and obligations of citizenship under a republican form of government; or

"2. All persons who can correctly read in the English language any paragraph of the Constitution of the United States or of this State and correctly write the same in the English language when read to them by any one of the registrars, and all persons who solely because of physical disability are unable to comply with the above requirements but who can understand and give a reasonable interpretation of any paragraph of the Constitution of the United States or of this State that may be read to them by any one of the registrars." Constitution of 1945, art. 2, sec. 1, par. 4 (Code, Ann., § 2-704).

The right of suffrage is a political right, as compared with a property or civil right. In the absence of an express constitutional grant of suffrage, it is not a vested, absolute, or natural right such as it is deemed a citizen cannot be deprived of except by due process of law. The right to vote is not granted to a citizen by the United States Constitution. Nor is it a privilege of a citizen of the United States under the Fourteenth Amendment to the Federal Constitution. Nor does the Fifteenth Amendment to that Constitution abridge a State's power over suffrage, but only denies to the States any action which discriminates against citizens of the United States to qualify or vote, by reason of race, color, or previous condition of servitude. Though the Constitution of this State guarantees the right of suffrage to those who meet its qualifications, and they are entitled to register, and this right cannot be absolutely denied or taken away by legislative enactment, the legislature has the right to prescribe reasonable regulations as to how these qualifications shall be determined. The fact that a citizen who meets one of several tests provided by the Constitution has to register or reregister does not deprive him of his constitutional right of suffrage, but is only a reasonable regulation under which the right may be exercised. For authorities supporting the foregoing, see: *Stewart* v. *Cartwright,* 156 *Ga.* 192 (118 S. E. 859); *Breedlove* v. *Suttles,* 183 *Ga.* 189 (188 S. E. 140), affirmed in

302 U. S. 277 (58 Sup. Ct. 205, 82 L. ed. 252); United States
v. Cruikshank, 92 U. S. 542 (23 L. ed. 588); Pope v. Williams,
193 U. S. 621 (24 Sup. Ct. 573, 48 L. ed. 817); Twining v. State
of New Jersey, 211 U. S. 78 (29 Sup. Ct. 14, 53 L. ed. 97); Guinn
v. United States, 238 U. S. 347 (35 Sup. Ct. 926, 59 L. ed. 1340);
O'Neill v. Trask, 135 Wis. 333 (115 N. W. 823); Capen v. Foster,
12 Pick. (Mass.) 485 (23 Am. D. 632). See annotation in 91
A. L. R. 349.

The legislature, even in the absence of express constitutional
power, can provide for the registration of voters; but where the
State Constitution provides who shall be entitled to vote, the
legislature cannot take from or add to the qualification unless
the power is granted expressly or by necessary implication. *Tol-
bert* v. *Long,* 134 *Ga.* 298 (67 S. E. 828). However, the legis-
lature has a wide latitude in determining how the qualifications
required by the Constitution may be determined, provided it
does not deny the right of franchise by making the exercise
of such right so difficult or inconvenient as to amount to a
denial of the right to vote. Klein *v.* Killenbrand, 101 Ohio 370
(130 N. E. 29). Registration statutes have for their purpose the
regulation of the exercise of the right of suffrage, not to qualify
or restrict the right to vote. The Constitution of this State, in
setting up requirements for the qualification of electors, con-
templates enactment of laws to determine these qualifications.
Paragraph 1 of sec. 2 of art. 2 of the Constitution of 1945 (Code,
Ann. § 2-801), provides: "The General Assembly may provide,
from time to time, for the registration of all electors." Registra-
tion laws are the means or machinery under which proofs are
furnished showing the existence of the voter's qualifications.
*Mayor &c. of Madison* v. *Wade,* 88 *Ga.* 699 (16 S. E. 21);
Mason *v.* Missouri, 179 U. S. 328 (21 Sup. Ct. 125, 45 L. ed.
214). However, such registration laws must be impartial, uni-
form, and reasonable, giving to all a fair and reasonable oppor-
tunity to exercise such right. *Stephens* v. *Albany,* 84 *Ga.* 630,
636 (11 S. E. 150).

Every presumption favors the constitutionality of a regularly
enacted statute. Only where it manifestly impinges upon the
Constitution or violates rights of citizens will it be declared un-
constitutional. The alleged conflict with the Constitution must

be plain and palpable. *Coy* v. *Linder*, 183 *Ga.* 583, 585 (189 S. E. 26) ; *Culbreth* v. *Southwest Georgia Regional Housing Authority*, 199 *Ga.* 183 (2) (33 S. E. 2d, 684).

■ The defendant asserts that the Voters' Registration Act as a whole violates certain specified provisions of the State Constitution because: (1) the act discriminates against the right of one to exercise his franchise, and therefore tends to take away the liberties of the voters of the State of Georgia without due process of law; (2) it impinges upon his duty to conserve the money of Richmond County under his control; (3) the act sets up a system of censorship contrary to a democratic form of government. His contentions as summed up in his brief are that the Voters' Registration Act, while requiring all persons who have previously registered to register again, has for its purpose to hamper and defeat the right of "a great class of the citizens of Georgia from voting." We know of no constitutional right possessed by a registered voter which prevents the legislature from requiring him to qualify as a voter in future elections. Counsel for the defendant have cited no authority, and we have found none, to support his contention that a voter who was on the registration list of qualified voters at the time of the passage of this act has a vested right to stay on the list.

The only time in the history of the registration laws of Georgia we have found in which a voter could claim a constitutional right to remain on the voters' list without being required to reregister was by virtue of the amendment of 1908 (Ga. L. 1908, p. 27, Civil Code (1910), §§ 6395-6403 inclusive). This amendment provided that, where one registered between October 7, 1908, and January 1, 1915, as a qualified voter under subsection 1 or 2 of paragraph 4, section 1, article 2, he "shall thereafter be permitted to vote; provided he meets the requirements of paragraphs 2 and 3 of this section." This guarantee of permanence of registration to this class of registered voters does not now exist. The Constitution of 1945 did not carry forward paragraph 5 or subsections 1 and 2 of paragraph 4 of section 1 of article 2 of the Constitution of 1877 as amended. The minutes of the constitutional commission show that these provisions were considered and deliberately eliminated. The provisions of paragraph 1, section 1, and paragraph 1, section 2, of article 2 of

the Constitution of 1945 clearly indicate that the General Assembly was authorized to enact laws "from time to time for the registration of all electors," and "only those persons shall be allowed to vote who have been first registered in accordance with the requirements of law." Though section 3 of the act of 1913 (Ga. L. 1913, p. 115, Code, § 34-115), did provide that "the electors who have qualified and have signed the permanent qualification book, shall not thereafter be required to register or further qualify, except as may be required by the Board of Registrars," one who was on the permanent voters' list at the time the Voters' Registration Act of 1949 was passed did not possess such a status or "vested right" as prevented the General Assembly from changing or repealing previous registration laws and requirements as to qualifications of electors. The legislature having power to enact registration laws, the fact that one obtains a status under the provisions of one law does not amount to a contract or create a vested right that prevents a subsequent legislature from repealing the old law and passing a new one. *Hamrick* v. *Rouse,* 17 *Ga.* 56; *Swindle* v. *Brooks,* 34 *Ga.* 67; *Hardeman* v. *Downer,* 39 *Ga.* 425; Munn *v.* Illinois, 94 U. S. 113 (24 L. ed. 77); The Chinese Exclusion Case, 130 U. S. 581 (9 Sup. Ct. 623, 32 L. ed. 1068); Chicago & Alton Railroad Co. *v.* Tranbarger, 238 U. S. 67 (35 Sup. Ct. 678, 59 L. ed. 1204). It may be that those voters who are now on the permanent voters' list will be put to great inconvenience in registering again, but this standing alone is not a sufficient reason to strike down the act. Courts are not free to nullify a statute merely because it appears to be absurd. *Flint River Steamboat Co.* v. *Foster,* 5 *Ga.* 194 (2) (48 Am. D. 248). Nor do courts have anything to do with either "the wisdom, policy, or expediency of a law. These are matters purely of legislative deliberation and cognizance." *Winter* v. *Jones,* 10 *Ga.* 190 (6) (54 Am. D. 379). See also *Delaney* v. *Plunkett,* 146 *Ga.* 547 (91 S. E. 561); Norman *v.* Baltimore & Ohio Railroad Co., 294 U. S. 240 (55 Sup. Ct. 407, 79 L. ed. 885, 95 A. L. R. 352); Bayside Fish Flour Co. *v.* Gentry, 297 U. S. 422 (56 Sup. Ct. 513, 80 L. ed. 772).

The main purpose of the Voters' Registration Act is to require all persons who are qualified to vote under the Constitu-

tion to register before voting. "If the legislature had other or additional purposes, which, considered apart, it had no constitutional power to make effective, that would not have the result of making the act invalid." Stephenson *v.* Binford, 287 U. S. 251 (7), 276 (53 Sup. Ct. 181, 77 L. ed. 288, 87 A. L. R. 721).

We are therefore of the opinion that the Voters' Registration Act of 1949 is not invalid in every part, for the reasons asserted by the defendant, as being violative of specified provisions of the Constitution of this State; and therefore hold that the trial court did not err in overruling the grounds of demurrer which asserted the invalidity of the act as being in violation of art. 1, sec. 1, par. 3, or art. 1, sec. 1, par. 1, or art. 1, sec. 1, par. 2, of the State Constitution.

■ It is asserted that the act as a whole violates the Fourteenth Amendment to the Federal Constitution, because it abridges the privileges and immunities of citizens, and deprives them of liberty without due process of law, since the right to vote is the very foundation of a democratic form of government, and said act sets up a board "which has power to discriminate and censor the right of citizens to vote." In substance, the defendant says that the act denies, (a) persons liberty without due process of law, (b) a citizen of the equal protection of the law, because it sets up a board with power to censor the right of a citizen to vote; but it is not pointed out how or in what manner the act denies to him without due process of law a right or liberty which is guaranteed by the Fourteenth Amendment. He asserts that the act denies to citizens the liberty of voting. As we have shown, the Fourteenth Amendment does not confer upon a citizen of this State the right to vote. United States *v.* Cruikshank, 92 U. S. 542 (supra). Nor is such right a privilege of a citizen of the United States. Pope *v.* Williams, 193 U. S. 621 (supra). It is a political right, not a civil or property right. Morris *v.* Colorado Midland Ry. Co., 48 Colo. 147 (109 Pac. 430); Walls *v.* Brundidge, 109 Ark. 250 (160 S. W. 230); Minor *v.* Happersett, 88 U. S. 162 (22 L. ed. 627). We have further shown that the Fourteenth Amendment does not prevent a State from enacting laws requiring qualified voters to register. Unless such laws nullify

or unreasonably abridge the right to vote, they are not subject to the charge that they violate the Fourteenth Amendment.

As to the charge that the act as a whole sets up a board of censors "which has power to discriminate and censor the right of citizens to vote," we take it that the plaintiff attempts to assert that the act violates the equal-protection clause of the Fourteenth Amendment. However, he does not show how or in what manner the act operates to his hurt or to the hurt of others. There is no assertion that he or anyone else who is qualified under the Constitution to vote has sought to register and been unlawfully denied the right to register. Nor does he point out how or in what manner the act empowers the Board of Registrars to discriminate against his right or that of any other citizen. See, in this connection, *Cooper Company of Gainesville* v. *State,* 187 *Ga.* 497, 501 (6) (1 S. E. 2d, 436); Wiley *v.* Sinkler, 179 U. S. 58 (21 Sup. Ct. 17, 45 L. ed. 84); McGrael *v.* Phelps, 144 Wis. 1 (128 N. W. 1041); Hendrick *v.* Maryland, 235 U. S. 610 (35 Sup. Ct. 140, 59 L. ed. 385).

So we are of the opinion that the ground of demurrer which attacks the Voters' Registration Act as violative of the Fourteenth Amendment to the Federal Constitution was properly overruled.

■ It is next asserted that the Voters' Registration Act violates the Fifteenth Amendment to the Federal Constitution, because it abridges the right of citizens to vote because of rac' or color, and leaves to three men unlimited and arbitrary pow'r to declare them ineligible to vote. This amendment only denies to the States the authority to discriminate on account of race, color, or previous condition of servitude. United States *v.* Reese, 92 U. S. 214 (23 L. ed. 563); Guinn *v.* United States, 238 U. S. 347 (supra). We can find nothing in the act to indicate that the law has the effect of denying to any qualified voter the right to register on account of race, color, or previous condition of servitude, so as to form the basis for the defendant to challenge the statute as violating the Fifteenth Amendment.

In support of his contention that the act violates this amendment, counsel for the plaintiff cite the cases of Davis *v.* Schnell, 81 Fed. Supp. 872, and Smith *v.* Allwright, 321 U. S. 649 (64 Sup. Ct. 757, 88 L. ed. 987, 151 A. L. R. 1110). In each of these

cases, the person challenging the statute in question was a member of a class that the court held the statute proposed to discriminate against. No contention is made here that the act as a whole discriminates against the class of which the defendant is a member. Neither of the cases cited is controlling upon the question that the defendant makes in this case.

The mere possibility that the Board of Registrars may under this statute act arbitrarily or recklessly in administering the law and thereby violate constitutional rights is not a ground for declaring the act as a whole unconstitutional. Monongahela Bridge Co. v. United States, 216 U. S. 177 (30 Sup. Ct. 356, 54 L. ed. 435).

We are therefore of the opinion that the ground of demurrer that the Voters' Registration Act in its entirety violates the Fifteenth Amendment to the Federal Constitution was properly overruled.

■ Another ground of demurrer asserts that the plaintiffs have an ample remedy at law and can sue at law to recover their salaries, and further, that the petition does not show that, if the defendant signed the warrants, this alone would cause the treasurer of the county to pay the same, because it does not appear from the petition that the defendant has any funds in his hands out of which the court could compel payment of the salaries claimed, and that to grant the writ of mandamus would be fruitless. It appears from the allegations of the petition that the plaintiffs are seeking to require the defendant to sign warrants *for* the payment of their respective salaries, and not to require the defendant to *pay* their salaries from public funds. The question as to whether a county officer in charge of its fiscal affairs can be required by mandamus to sign warrants for the payment of county warrants under a statute creating such Board of Registrars, out of county funds, we think is settled by the case of *Howell* v. *Bankston,* 181 *Ga.* 59 (1) (181 S. E. 761). There, three persons, duly appointed and qualified county registrars under statutory provisions, instituted mandamus proceedings to compel the Board of Commissioners of Roads and Revenues of Butts County to issue warrants on the county treasurer for stated amounts due them for preparing voters' lists. The defendant commissioners demurred on the grounds: (1) that

796

there was no authority in law for the writ of mandamus requiring them to pay an unliquidated account; and (2) that the petition did not allege wherein the county was liable for the accounts, and no legal authority was shown authorizing the defendants to levy a tax to pay the claims, and no legal right against the defendants for refusing to issue a warrant payable out of county funds. This court held that, under the Constitution and statutes of Georgia, "county commissioners are authorized to pay, from general county funds, the costs of county registrars in preparing lists of voters." It was further held that no valid ground of demurrer existed because the plaintiffs' demand for compensation was not liquidated, or in judgment. This case has been cited with approval in *Leverette* v. *Leonard*, 192 *Ga.* 359 (15 S. E. 2d, 421). This ground of demurrer was properly overruled.

■ The assignments of error on overruling certain specified grounds of demurrer, which are not argued in the brief of counsel for the plaintiff in error, will not be considered by this court.

■ It appearing from the evidence before the trial judge that the plaintiffs had been duly appointed and qualified as the Board of Registrars, and their salaries fixed by the court under the provisions of the Voters' Registration Act, and that they were entitled to be compensated for their services, and it further appearing that it was the duty of the defendant, as Chairman of the Board of Commissioners of Roads and Revenues, to sign the warrants for their compensation when presented to him, the lower court did not err in making the writ absolute.

*Judgment affirmed. All the Justices concur.*