1. In a general State election for lawful constables, where two constables are to be elected, and the names of three candidates appear on the ballots, and the official ballot contains the wording "vote for two," an elector or voter may but is not required to vote for two candidates, but may vote for only one of the candidates, and erase, mark out, or cancel the names of the other two candidates for whom he does not wish to vote, and the ballot should be counted in favor of the one for whom it was thus cast.
2. While the decision and judgment of the ordinary, after hearing and determining an election contest, such as is provided for under Code § 34-3001, is final and conclusive, this is not true of a judgment of the ordinary dismissing a contest on motion and refusing to hear the same, where the contest is based on grounds sufficient in law, and mandamus will issue to compel the ordinary to hear such contest.
 No. 16587. APRIL 11, 1949.
A. B. Trapp filed in the Superior Court of Floyd County his petition for mandamus against Honorable Carl H. Griffin, as ordinary, in which he alleges: that on December 4, 1948, the regular time fixed by law for holding an election of constables throughout Georgia, he was one of three candidates for Constable of the 1120th District G. M., Floyd County, Georgia, the other two candidates being Idus Adams and C. S. Garrett; that three named persons were managers of the election, and after the polls were duly closed, the managers proceeded to count the ballots; that a large number of ballots were cast in said election, containing petitioner's name only for constable; and that the managers of said election refused to count any ballots that were voted for petitioner, if said ballot did not have the name of one of the other candidates on said ballot. The petitioner alleges that, if the managers had counted, tallied, and given to him all of the ballots or votes cast that had his name only, he would have received more votes than Idus Adams. The petitioner further alleges that C. S. Garrett received enough votes to elect him, regardless of whether or not the ballots that had only the name of the petitioner thereon had been counted for him. He further alleges that on Monday morning, December 6, 1948, before the election returns had been consolidated and the results thereof declared, he filed with Honorable Carl H. Griffin, ordinary, a petition, contesting the apparent result of the election, a *Page 177 
copy of which he has attached to the petition as exhibit "A," and the substance of which is as follows:
"Take notice that I, A. B. Trapp, hereby file notice that I do hereby contest the result of the election, and contest the election of Constable of the 1120th District G. M., Floyd County, Georgia, held on the 4th day of December, 1948, on the ground that the managers of said election failed and refused to count all the ballots that were cast that had my name on the same. That numerous ballots were cast that had my name and my name only on same for Bailiff or Constable of said 1120th District, and that under the law any ballot that was cast for me, although the same did not contain the name of any other person for constable, should have been counted in my favor. Wherefore, I demand that the ballots containing my name on same shall be counted, and when so counted the result will show that I was duly and legally elected Constable of the 1120th Dist. G. M. of Floyd County, Georgia."
It is further alleged that a copy of the notice of contest was served on the other two candidates, and that the hearing of the contest was set by the ordinary for 10 o'clock a. m., December 20, 1948; that on December 10, 1948, the petitioner filed an amendment to his original petition for contest, which amendment was duly allowed and is as follows:
"Now comes A. B. Trapp, and amends his petition heretofore filed and says that he will take the evidence of Lee Pass and Mrs. Fred Camp and Mrs. Fred Coulter, and by such evidence will show that the managers failed and refused to count the ballots cast that had the name of petitioner and petitioner only on said ballot, and that said testimony of said named parties will show that petitioner received more legal votes than Idus Adams. Petitioner asks that said contest be heard December 20, 1948."
It is further alleged: that on December 13, 1948, the petitioner served the other two candidates with a written notice that the contest would be heard by the ordinary at 10 o'clock a. m., December 20, 1948, at which time, he, the contestant, would take the testimony of the three named managers of the election; that subpoenas were duly served on the managers requiring them to be and appear at this hearing to give testimony; that they duly *Page 178 
appeared and were prepared and ready to testify on the election contest; and that, when the contest was called, a written agreement was entered into between the three candidates and their counsel "that not any ballots cast in the election in question that contained only the name of A. B. Trapp thereon were counted by the managers, and that there were ballots cast that contained only the name of A. B. Trapp."
It is further alleged that, when the hearing of the contest was called by the ordinary on December 20, 1948, he entered the following order: "Upon the motion of counsel for Idus Adams and C. S. Garrett, the petition for contest filed by A. B. Trapp is dismissed on the grounds that the managers of the election in controversy were not required and could not legally count any ballot that contained only the name of A. B. Trapp, when in fact there were three candidates running and only two to be elected, and it was printed on the ballot the words, `Vote for two.'"
It is further alleged: that all of the ballots cast for the petitioner had been counted for him, he would have received more votes than were received by Idus Adams, and thereby he would have been and should have been declared duly elected; and that any and all ballots cast in said election which contained only the name of the petitioner were legal ballots and should have been counted in his favor.
It is further alleged: that all of the facts were made known to the ordinary at the time of and before the hearing at 10 o'clock a. m., on December 20, but that he nevertheless declined and refused to hear said contest and refused to hear the testimony of the managers of the election, and refused to have the box containing the ballots brought from the office of the clerk of the superior court into the ordinary's office and there opened and the ballots in said box duly and legally counted; that such action on the part of the ordinary was a dereliction of his duty and a failure and refusal on the part of said ordinary to discharge his official duty; and that he should be compelled to properly and legally discharge his duties with regard to the election contest in question.
The petition prayed: that the court issue a mandamus nisi directed to the ordinary, requiring him to show cause at a time and place designated by the court why a mandamus should not *Page 179 
be issued against him, requiring him to bring the ballot box containing ballots cast in said election on December 4, 1948, for lawful constable of the 1120th District G. M., Floyd County, Georgia, from the office of the clerk of the superior court into the office of said ordinary, and there proceed to open the same and count all of the ballots cast in said election for lawful constable, and especially the votes or ballots that were cast for A. B. Trapp only for said office; that the mandamus be made absolute, and the ordinary be required to count said ballots as prayed; and for process.
On this petition an order was passed providing for service thereof on the defendant, and setting the hearing for January 4, 1949, and on that date the trial court entered the following order and judgment: "The within case coming on for a hearing, and after hearing the evidence, and the agreed statement of facts, the within petition for mandamus nisi is made absolute, and Carl Griffin, Ordinary of Floyd County, Georgia, is ordered and directed to get the ballot box containing the ballots cast in the election in question from the office of the clerk of the superior court of said county, within ten days from this date, and proceed to count said ballots cast in said election for lawful constable of the 1120th District G. M. of Floyd County, Georgia; and said Carl Griffin, ordinary aforesaid, is ordered and directed to count all ballots that contained only one name for said office, of lawful constable and total said ballots to the credit of the candidate receiving same, although said ballot may have contained only the name of one candidate for lawful constable."
This order states: "The within case coming on for a hearing, and after hearing the evidence, and the agreed statement of facts, the within petition for mandamus nisi is made absolute." The bill of exceptions recites: "the said case was heard upon an agreed statement of facts . . without the intervention of a jury, and without formal written answer by the ordinary . . by agreement." The only agreed statement of facts appearing in the record is that entered into between the three candidates and their counsel, which has already been quoted.
To the judgment of the trial court the defendant excepted and assigns the same as error "on the ground that it was contrary to law, and contrary to the evidence in said case, and against *Page 180 
the weight of the evidence and there was no evidence to support said judgment and order in that": (a) In the constables' election out of which this controversy arose, it was specified on the official ballot that the voters qualified and participating therein were to "vote for two" candidates for constable, and it was not the duty of the election managers as named in the petition for mandamus to count any ballot for constable wherein two candidates had not been voted for; (b) it was not the duty of the election managers to count any ballot for constable wherein only one person had been voted for; and (c) it was not the clear legal duty of the ordinary to count all of the ballots that contained only one name for said office of lawful constable and total said ballots to the credit of the candidate receiving same.
In the brief of counsel for the plaintiff in error it is stated that the record raises these questions: "(1) Was it the clear legal duty of the ordinary, or the election managers, to count the ballots for constable which were marked only for one candidate, A. B. Trapp? (2) Upon the hearing, was the decision of the ordinary final? (3) If so, will mandamus lie in such a case?"
1. Counsel for both parties state in their briefs that they have been unable to find any decisions by either of the appellate courts of this State dealing with the first question presented, that is whether, in a general election of lawful constable in Georgia where two constables are to be elected and where the official ballot contains the statement "vote for two," an elector or voter may lawfully vote for one of the three candidates running for the two places to be filled, and strike the names of the other two candidates, and have his ballot counted for the one for whom he did vote. We have been unable to find any decision in this State dealing with the precise question here presented, and it appears to be a case of first impression.
The Code, § 24-801, provides: "There shall be two constables in each militia district of the several counties elected by the people of each district who shall hold their offices for four years unless sooner removed." Section 34-2705 provides: "Constables shall be elected at the same place and by the same class of *Page 181 
voters as justices of the peace. The elections for constables shall be held quadrennially on the first Saturday in December, for terms of four years beginning on January 1 following their election." And Code § 34-2706 is as follows: "Constables' elections shall be conducted in the same manner as those of justices of the peace, with the exception that the returns shall be made to the ordinary of the county."
The provisions of the Code with reference to the election of justices of the peace will be found in §§ 34-2701 to 34-2704, and the oath required of the managers of these elections will be found in § 34-1202, which is as follows: "All and each of us do swear that we will faithfully superintend this day's election; that we are ordinaries, justices of the peace, or freeholders (as the case may be) of this county; that we will make a just and true return thereof, and not knowingly permit any one to vote unless we believe he is entitled to do so according to the laws of this State, nor knowingly prohibit any one from voting who is so entitled by law, and will not divulge for whom any vote was cast, unless called on under the law to do so. So help me God."
There is no requirement in the Code sections above referred to, or elsewhere in the law, so far as we have been able to find, that the elector or voter shall or must vote for some one for each place to be filled in order to exercise his right to vote for whom he pleases to fill only one office, even though there be more than one vacancy. One of the most important and sacred rights possessed by an American citizen is to vote for whom he pleases, and to have that vote counted. It is so important and sacred that it is written into the fundamental law of our State in article II, section I, paragraph II of the Constitution (Code, Ann., § 2-702), that "Every citizen of this State who is a citizen of the United States, eighteen years old or upwards, not laboring under any of the disabilities named in this Article, and possessing the qualifications provided by it, shall be an elector and entitled to register and vote at any election by the people."
In referring to this provision of the Constitution, this court, in Stewart v. Cartwright, 156 Ga. 192, 197
(118 S.E. 859), said: "The words, `shall be an elector and entitled to register and vote at any election by the people,' are unequivocal, and the entire provision amounts to a constitutional guaranty of the right of *Page 182 
suffrage, which, though subject to reasonable regulation, can not be absolutely denied or taken away by legislative enactment. There can not be any doubt that a statute providing for an official ballot for use at a general public election, which prescribes the form to be of such character as will deny the voter his right to vote for whomsoever he pleases, would be violative of the above provision of the Constitution." And in that case and in Adair v. McElreath, 167 Ga. 294, 314
(145 S.E. 841), this court has approved the doctrine that "the legislature can not restrict an elector to voting for some one of the candidates whose names have been printed upon the official ballot. He must be left free to vote for whom he pleases, and the Constitution has guaranteed to him this right."
As pointed out above, we have been cited to no provision of the law which undertakes to require an elector to vote for a specified number of persons in order to be able to vote for one particular person for whom he chooses to vote for a particular office, even if such requirement could be lawfully imposed in a general or State election, and the election for constables has been held by this court to be a State or general election. Rose
v. State, 107 Ga. 697, 704 (33 S.E. 439).
The Code, § 34-1903, in making provision for official ballots to be used in primary elections, provides: "On the ballot shall be printed such words as will enable the voter to express his choice, such as `Vote for one,' `Vote for two,' and the like"; but there is no requirement there, or elsewhere, that the voter must vote for the total number of persons to be elected in order to have his vote for one particular candidate counted. On the contrary, this same Code section provides: "and the voter or elector shall erase, mark out or cancel the name or names of the candidate or candidates for whom he does not wish to vote." While the following section of the Code, § 34-1904, which deals, among other things, with the preparation of ballots to be used in elections other than primary elections, does not contain this identical language, it does provide: "Said officers shall also have printed on said ballots such language as may be necessary for the voters to express their desires as to any question or matter which may be submitted at any such election. In all other particulars said ballots shall be arranged, printed, and prepared for regular elections as provided in section 34-1903." *Page 183 
Whether the grand jury of Floyd County has made these provisions of law operative in that county does not appear from the record, but they are cited here to illustrate the policy of the law to preserve for the elector his right of free choice. The requirements that the ballot carry the information, "`Vote for one,' `Vote for two,' and the like," are for the information and benefit of the elector in exercising his free choice, and the right of the voter or elector to erase, mark out, or cancel the name or names of the candidates for whom he does not wish to vote is there recognized. The right to vote against some one is held as sacred by some as the right to vote for another, and the fact that an elector exercises both rights at the same time, where the opportunity to do so is afforded, would not render his ballot illegal, and prevent it from being counted. 29 C. J. S. 328, § 227, declares the general rule to be, "All votes cast in the manner specified by law by duly qualified voters must be counted."
Under the foregoing authority, we hold that there is no provision of law in Georgia preventing what is commonly referred to as "single shot" voting in a general or State election for lawful constable, and that it was the clear legal duty of the election managers in consolidating the vote, and of the ordinary in the contest, to count the ballots which were marked for only one candidate, the petitioner, although there were two constables to be elected.
2. The other two questions presented by the record are controlled by the Code, § 34-3001, which provides: "Whenever any contest shall arise over an election of any constable . . the same shall be filed with, heard, and determined by the ordinary of the county wherein such contest may arise, under the same rules and regulations as to mode of procedure as prescribed in contests where commission is issued by the Governor"; and by the decision of this court in West v. Lewis, 188 Ga. 437, 439
(4 S.E.2d 171), wherein it was held: "In hearing and determining an election contest under the provisions of the above section, the ordinary does not act in a judicial or quasi judicial capacity. Shirley v. Gardner, 160 Ga. 338
(127 S.E. 855). In such cases the sole jurisdiction of the ordinary is `to determine . . whether the person filing the contest, or the one who was declared elected, received the greater number of legal votes, and, in case the contestant *Page 184 
received it, to declare him duly elected.' Walton v. Booth,151 Ga. 452 (107 S.E. 63); Simpson v. Rimes, 141 Ga. 822
(82 S.E. 291). While the decision and judgment of the ordinary upon the hearing as to which of the candidates received the greater number of legal votes is final and conclusive (Harris
v. Glenn, 141 Ga. 687, 81 S.E. 1103; Robertson v.Easley, 20 Ga. App. 258, 92 S.E. 1027; Carter v. Janes,96 Ga. 280, 23 S.E. 201; Johnson v. Jackson, 99 Ga. 389,27 S.E. 734; Caldwell v. Barrett, 73 Ga. 604; Tupper v.Dart, 104 Ga. 179, 30 S.E. 624; Burgess v. Friar,183 Ga. 386, 188 S.E. 526; Kinman v. Monk, 179 Ga. 132,175 S.E. 458; Sibley v. Park, 175 Ga. 846, 166 S.E. 212), this is not true of a judgment of the ordinary dismissing a contest on demurrer and refusing to hear the same; and where the contest is based on grounds sufficient in law, mandamus will issue to compel the ordinary to hear such contest. Morgan v.Wason, 162 Ga. 360 (133 S.E. 921); Chapman v. Dobbs,175 Ga. 724, 728 (166 S.E. 22). On the other hand, where the petition set out no valid ground of contest, the ordinary may sustain a motion to dismiss the petition. In such case, his judgment being correct, mandamus will not issue to compel him to hear the contest. Norwood v. Peeples, 158 Ga. 162
(122 S.E. 618)."
In the instant case, the ordinary did not hear and determine the question as to which of the candidates received the greater number of legal votes. Had he done so, under the authorities above cited, his decision would have been final and conclusive. See also, to the same effect, Owen v. Butler, 188 Ga. 645
(4 S.E.2d 635). Or had the petition for contest set out no valid legal ground therefor, the judgment of the ordinary dismissing the same would not have been reviewable by mandamus.Norwood v. Peeples, supra. But in this case, instead of hearing and determining the question presented in the contest, he dismissed it on motion in the nature of a general demurrer and refused to hear and determine the same; and under the holding in the preceding division of this opinion, that the contest was based on grounds sufficient in law, mandamus was an appropriate remedy to compel the ordinary to hear and determine such contest.Morgan v. Wason, supra; Chapman v. Dobbs, supra; West
v. Lewis, supra.
It having been stipulated that ballots were cast as contended *Page 185 
by the petitioner, and that they were not counted, the trial judge did not err in rendering the judgment complained of and in making the mandamus absolute.
Judgment affirmed. All the Justices concur, except Atkinson,P. J., who dissents from the ruling in the first headnote and thecorresponding division of the opinion.