## S02A1818. COX v. BARBER.
(568 SE2d 478)

PER CURIAM.

In this election contest, the trial court ordered Secretary of State Cathy Cox to place candidate J. Mac Barber's name on the primary ballot for the district four seat on the Georgia Public Service Commission. We granted the Secretary of State's application for discretionary appeal to consider whether the trial court correctly held that the one-year residency requirement in OCGA § 46-2-1 (b) is unconstitutional as applied to Barber. Because the statutory requirement is constitutional and Barber has not resided in district four for twelve months prior to the election, we hold that the Secretary of State properly concluded that he was disqualified from being a candidate for that PSC seat. Therefore, we reverse the trial court.

The Georgia Public Service Commission is a five-member body created under the Constitution of the State of Georgia.[1] OCGA § 46-2-1 (a) provides that commissioners are elected statewide for six-year terms. In 1998, the Georgia General Assembly amended OCGA § 46-2-1 to establish that new members elected to the commission must reside within specific districts. Subsection (b) now provides: "In order to be elected as a member of the commission from a Public Service Commission District, a person must have resided in that district for

---

[1] Ga. Const. of 1983, art. IV, § I, para. I (a).

at least 12 months prior to election thereto."[2]

The legislature made this residency requirement effective for elections for districts three and five in 2000, districts one and four in 2002, and district two in 2004.[3] Following the 2000 decennial census, the Georgia General Assembly amended the statute to change the boundaries of the PSC districts, effective April 2002.[4] As part of the reapportionment process, the legislature moved Jackson County from district four to district two.

In 1999 Barber moved to DeKalb County to run for the district three seat on the PSC. After his defeat, he returned to Jackson County where he was residing in November 2001. The trial court found that Barber became a legal resident of Banks County on January 15, 2002.

In June 2002, Barber qualified to run for the district four seat on the PSC. His opponent challenged his eligibility on the grounds that Barber did not reside in district four and had not resided within the district for the required twelve months. After a hearing, an administrative law judge concluded that Barber did not meet the one-year residency requirement in OCGA § 46-2-1 (b). The Secretary of State adopted the ALJ's initial decision as the final agency decision and disqualified Barber as a candidate for the PSC seat in district four.

Barber filed a petition for judicial review in superior court. The trial court concluded that OCGA § 46-2-1 (b) was unconstitutional as applied to Barber because it disqualified him from seeking the PSC seat on the grounds that he would not reside within the district for one year prior to the general election in November 2002. The trial court ordered the Secretary of State to place Barber's name on the ballots for the August 20 primary election. Because the primary will be held next week, we agreed to give expedited review of this appeal.

1. In construing statutes, courts shall look diligently for the intention of the General Assembly.[5] The words of a statute should be given a reasonable and sensible interpretation to carry out the legislative intent and render the statute valid.[6]

Applying these rules, we interpret the residency provision in OCGA § 46-2-1 as requiring a candidate for the PSC to be a resident of the territory within the district for 12 months prior to the general election. This interpretation is consistent with similar residency requirements in the Georgia Constitution for other state and county

---

[2] OCGA § 46-2-1 (b) (Supp. 2001).

[3] See OCGA § 46-2-1 (d) (Supp. 2001).

[4] 2002 Ga. Laws 360.

[5] OCGA § 1-3-1 (a) & (b).

[6] See *Mayor &c. of Hapeville v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980).

offices.[7] The 1983 Georgia Constitution requires members of the Georgia General Assembly to "have been legal residents of the territory embraced within the district from which elected for at least one year."[8] As the State Attorney General noted in interpreting the comparable provision in the 1976 Constitution, our Constitution does not create any exception to the one-year residency requirement due to reapportionment of the district.[9]

In this case, Barber admits that he was a resident of Jackson County, which is now in district two, in November 2001 and did not attempt to become a resident of Banks County in district four until January 2002. Because Barber was not a resident of the geographic territory in district four during the twelve months prior to the November 2002 general election, he is not eligible to run for the PSC seat in that district in this year's election.

2. In invalidating the residency requirement, the trial court concluded that OCGA § 46-2-1 violated equal protection by disqualifying Barber because he "will not have resided within District 4 as it has been reconfigured since reapportionment (April 11, 2002) for one year prior to the November 5, 2002, General Election." Barber contends that the trial court was correct because district four did not exist for the minimum twelve months specified by the residency requirements of OCGA § 46-2-1 (b).

The United States Supreme Court has never considered directly the validity of durational residency requirements for candidates for public office. In considering the filing-fee requirement for candidates, the Court stated: "The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters."[10] Moreover, the Court noted that in evaluating candidate restrictions "it is essential to examine in a realistic light the extent and nature of their impact on voters."[11]

Lower court opinions are inconsistent on the validity of requirements that a candidate must reside within a district for a specific time.[12] The Supreme Court has summarily affirmed decisions of three-judge panels upholding the seven-year residency requirement in the New Hampshire Constitution for candidates for governor and

---

[7] See, e.g., *Griggers v. Moye*, 246 Ga. 578 (272 SE2d 262) (1980) (upholding constitutional and statutory provisions requiring county officers to be a citizen of the county for at least two years immediately preceding the election or appointment).

[8] See Ga. Const. art. III, § II, para. III.

[9] See 1981 Op. Att'y Gen. 306 (U81-28).

[10] See *Lubin v. Panish*, 415 U. S. 709, 716 (94 SC 1315, 39 LE2d 702) (1974).

[11] See *Bullock v. Carter*, 405 U. S. 134, 143 (92 SC 849, 31 LE2d 92) (1971).

[12] See generally John D. Perovich, Annotation, Validity of Requirement that Candidate or Public Officer Have Been Resident of Governmental Unit for Specified Period, 65 ALR3d 1048 (1975).

state senator.[13] Other decisions have struck down much shorter residency requirements imposed on candidates, including a recent federal district court decision that invalidated New Jersey's one-year residency requirement for candidates for the state senate and general assembly.[14]

In addition, there is no single standard to apply in evaluating equal protection challenges to residency requirements for candidates.[15] Instead, the Supreme Court has adopted a flexible standard depending on the extent to which the challenged regulation imposes a burden on First and Fourteenth Amendment rights.[16] "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions."[17]

Residency requirements for candidates serve the important state interest of supporting our representative form of government. Requiring candidates to live in a district for a reasonable period of time before the election encourages them to become familiar with the problems, needs, and concerns of the people they seek to represent; it also exposes voters to the character, experience, and views of the individuals who seek to represent them. In addition, it ensures voters that their elected representatives will have at least a minimum amount of ties to the community. Arrayed against the state's legitimate interest in having informed voters and candidates is the individual voter's interest in having a choice at the ballot and the candidate's interest in the continued availability of political opportunity.[18]

Our state's residency requirement for the state Public Service Commission is of relatively short duration and applies to a limited number of potential candidates: the persons who moved into the relevant district since last November. Under our interpretation of the PSC statute, it does not disqualify long-time residents of counties

---

[13] See *Sununu v. Stark*, 420 U. S. 958 (95 SC 1346, 43 LE2d 435) (1975), aff'g, 383 F. Supp. 1287 (D.N.H. 1974) (three-judge panel); *Chimento v. Stark*, 414 U. S. 802 (94 SC 125, 38 LE2d 39) (1973), aff'g, 353 F. Supp. 1211 (D.N.H. 1973) (three-judge panel).

[14] See *Robertson v. Bartels*, 150 F. Supp. 2d 691 (D.N.J. 2001); see also *McKinney v. Kaminsky*, 340 F. Supp. 289 (M.D. Ala. 1972) (invalidating five-year residency requirement for county commissioner).

[15] See *Woodward v. City of Deerfield Beach*, 538 F.2d 1081, 1082 n. 1 (1976) (discussing different standards of review that the United States Supreme Court has applied to equal protection cases involving candidates).

[16] See *Burdick v. Takushi*, 504 U. S. 428, 434 (112 SC 2059, 119 LE2d 245) (1992).

[17] See id. (quoting *Anderson v. Celebrezze*, 460 U. S. 780, 788 (103 SC 1564, 75 LE2d 547) (1983)).

[18] See *Lubin*, 415 U. S. at 715 (state's legitimate interest in keeping ballots within manageable limits may not unnecessarily burden an individual candidate's equally important interest in the continued availability of political opportunity and the voters' interest in asserting their preferences).

that were placed in district four during the reapportionment process. Thus, unlike the case cited by Barber in which almost one half the residents were disqualified from running for village elections due to the village's residency requirement,[19] this case does not involve a substantial number of residents excluded from seeking office or place a severe limitation on the voters' right to choose among candidates running for the PSC. Moreover, Barber has not been deprived of the opportunity to qualify and run for a seat on the PSC; voters in district three had the opportunity to vote for him in the 2000 elections, and he can again present himself to the voters as a candidate for the PSC in the 2004 elections. It is only because of the staggered terms for the five seats on the PSC that he was not able to run from his residence in Jackson County in this year's elections. Finally, there is no evidence in the record that the district lines were redrawn to exclude Barber specifically from being a candidate.[20]

For these reasons, we conclude that the residency requirement for the PSC is rationally related to the state's legitimate interests in fostering informed voters and promoting knowledgeable and responsive candidates with ties to the community. The requirement does not place an unreasonable burden on the right of voters to choose a candidate or the right of Barber to run for public office. Therefore, we hold that requiring Barber to reside in district four for twelve months prior to the general election in November has not denied him equal protection under the United States Constitution or the Georgia Constitution.

*Judgment reversed. All the Justices concur.*

DECIDED AUGUST 14, 2002.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General,* for appellant.

*Chilivis, Cochran, Larkins & Bever, Nickolas P. Chilivis, John K. Larkins, Jr., Charles S. Baker, Harold S. Gulliver,* for appellee.

---

[19] See *Headlee v. Franklin County Board of Elections,* 368 F. Supp. 999 (S.D. Ohio 1973) (three-judge panel).

[20] Cf. *La Porte County Republican Cent. Comm. v. Board of Comm'rs,* 43 F.3d 1126 (7th Cir. 1994) (reversing dismissal of complaint based on claim that residential districts were redrawn for the sole purpose of preventing three individuals from standing for election).