S10A1517. DEMOCRATIC PARTY OF GEORGIA, INC.
v. PERDUE et al.

(707 SE2d 67)

THOMPSON, Justice.

Appellant Democratic Party of Georgia, Inc. filed suit against appellees Governor Sonny Perdue, Secretary of State Karen Handel, and the State Election Board seeking a declaratory judgment and permanent injunctive relief against the enforcement of the 2006 amendment to OCGA § 21-2-417, known as the 2006 Photo ID Act ("2006 Act"). The trial court granted summary judgment to appellees on all counts of the complaint and denied appellant's cross-motion for partial summary judgment. On appeal, appellant contends the 2006 Act violates Art. II, Sec. I, Pars. II and III of the Georgia Constitution of 1983, in that it imposes an unauthorized condition and qualification on the right of registered Georgia voters to vote by requiring in-person voters to present a photo ID verifying their identity; and it unduly burdens the right to vote in violation of the equal protection clause of the Georgia Constitution, Art. I, Sec. I, Par. II. For the reasons that follow, we affirm.

In 1997, the Georgia General Assembly adopted OCGA § 21-2-417 (Ga. L. 1997, p. 662, § 3), which required registered voters in Georgia to identify themselves by presenting one of seventeen forms of photographic or non-photographic identification to election officials as a condition of being admitted to, and allowed to vote at the polls. Former OCGA § 21-2-417 (a). That law also allowed a voter who did not have one of the seventeen specified forms of identification to vote by signing a statement under oath swearing or affirming that he or she is the person identified on the elector's certificate. Former OCGA § 21-2-417 (b).[1]

In an effort to protect against in-person voter fraud, the legislature in 2005 amended OCGA § 21-2-417 (Ga. L. 2005, p. 253, § 59) ("2005 Act") to require registered voters in Georgia who vote in person to show one of six forms of government issued photo ID. If a person did not have or could not obtain an approved form of photo ID, he or she would be allowed to vote a provisional ballot upon

---

[1] Prior to the 1998 elections, registered Georgia voters were not required to present identification as a condition of voting.

swearing or affirming that the elector is the person identified in the elector's voter certificate, and that vote would be counted only if the voter traveled to the county registrar's office and presented a photo ID within two days of the election. Id. Voters who did not possess one of the acceptable forms of photo ID could obtain a photo ID card from service centers operated by the Department of Driver Services for a fee. Ga. L. 2005, p. 301, § 66.[2]

A group of organizations and individuals filed suit against Georgia election officials in the United States District Court for the Northern District of Georgia seeking to have the photo ID requirement of the 2005 Act declared unconstitutional. On October 25, 2005, the district court preliminarily enjoined enforcement of the 2005 Act, for among other reasons, imposing a poll tax in violation of the Twenty-Fourth Amendment to the United States Constitution. *Common Cause/Georgia v. Billups*, 406 FSupp.2d 1326, 1369-1370, 1377 (N.D. Ga. 2005) (*"Common Cause/Ga. I"*). The defendants in that case appealed to the Eleventh Circuit.

During the pendency of that appeal, the Georgia General Assembly repealed the 2005 Act and passed the 2006 Act with identical photo ID requirements for in-person voting and a new Code section, OCGA § 21-2-417.1, which requires the board of registrars in each county to issue a "Georgia voter identification card" containing a photograph of the voter free of charge to registered voters residing in the county who do not have another statutorily acceptable form of identification upon presentation of certain identifying documents. The significant distinction between the 2005 Act and the 2006 Act is that under the 2006 law, the fee charged for a State-approved voter ID card was eliminated. See OCGA § 21-2-417.1.

Following enactment of the 2006 Act, the Common Cause plaintiffs amended their federal complaint to challenge the 2006 Act on the same grounds asserted in their original complaint and sought a preliminary injunction against its enforcement. The district court preliminarily enjoined enforcement of the 2006 Act, but limited the injunction to the July 18, 2006 primary elections and corresponding primary run-off elections and declined to extend the injunction to future elections. *Common Cause/Georgia v. Billups*, 439 FSupp.2d 1294, 1351, 1360 (N.D. Ga. 2006) (*"Common Cause/Ga. II"*). The court so ruled after finding that efforts to educate voters concerning the statutory photo ID requirements had been insufficient in the time available prior to the 2006 primary elections and thus posed an

---

[2] Applicants seeking a card for voting purposes who swore under oath they were indigent could obtain one free of charge. Ga. L. 2005, p. 301, § 66.

undue burden on certain voters. Id. The district court noted, however:

> In issuing this Order, the Court does not intend to imply that all Photo ID requirements would be invalid or overly burdensome on voters. Certainly, the Court can conceive of ways that the State could impose and implement a Photo ID requirement without running afoul of the requirements of the Constitution. Indeed, if the State allows sufficient time for its education efforts with respect to the 2006 Photo ID Act and if the State undertakes sufficient steps to inform voters of the 2006 Photo ID Act's requirements before future elections, the statute might well survive a challenge for such future.

Id. at 1351.

During the pendency of the federal litigation, two registered Georgia voters filed a complaint in the Superior Court of Fulton County challenging the 2006 Act on state constitutional grounds.[3] One plaintiff voluntarily dismissed his claims, and the superior court entered an order with respect to the second plaintiff permanently enjoining enforcement of the 2006 Act based on a violation of Art. II, Sec. I, Pars. II and III of the Georgia Constitution. On appeal, this Court vacated the permanent injunction and remanded the case with direction that it be dismissed after finding that the sole remaining plaintiff lacked standing to challenge the constitutionality of the 2006 Act. *Perdue v. Lake*, 282 Ga. 348 (1) (a), (b) (647 SE2d 6) (2007).[4]

Subsequently, the federal district court lifted a stay of proceedings in the Common Cause litigation, which had been entered during the pendency of the *Lake* appeal, and conducted a trial on the merits. See *Common Cause/Georgia v. Billups*, 504 FSupp.2d 1333, 1340 (30) (N.D. Ga. 2007) (*"Common Cause/Ga. III"*). The only remaining claim for relief in that case was that the statute unduly burdens the right to vote in violation of the Equal Protection Clause of the Fourteenth Amendment. Id. at 1342 (I) (44). Following a bench trial at which plaintiffs sought a permanent injunction, the district court concluded that the Common Cause plaintiffs lacked standing to

---

[3] A similar case filed in the Superior Court of DeKalb County was voluntarily dismissed by the plaintiffs. *Berry v. Perdue*, Case No. 06-CV-4751-4.

[4] Specifically, this Court held that at the time of filing her complaint, plaintiff, who was a first time voter in Georgia, could have voted in person without the need to show a photo ID (see OCGA § 21-2-417 (c)), and that she also possessed a MARTA/ADA photo ID card which was acceptable for voting under OCGA § 21-2-417 (a) (2). Thus, she could not demonstrate she was harmed by the statute. *Lake*, supra.

pursue their claims, but "[i]n an abundance of caution," id. at 1374 (III) (A) (16), the court alternatively addressed the merits and determined that the 2006 Act did not violate the Equal Protection Clause because the interest of Georgia in preventing voter fraud outweighed the burden on the rights of voters. Id. at 1382 (III) (B). The result was that the district court dismissed the Common Cause plaintiffs' federal claims for lack of standing, "decline[d] to enter a permanent injunction, and [found] in favor of the State Defendants on Plaintiffs' undue burden claim." Id. at 1383 (III) (E). On appeal, the Eleventh Circuit concluded that certain remaining plaintiffs suffered an injury sufficient to confer standing to challenge the 2006 Act, but also determined that the district court "did not err when it determined that the legitimate interest of Georgia in preventing voter fraud justified the insignificant burden of requiring voters to present photo identification before they vote in person," and in declining to enter a permanent injunction on that basis. *Common Cause/Georgia v. Billups*, 554 F3d 1340, 1355 (III) (A) (11th Cir. 2009). (*"Common Cause/Ga. IV"*). Accordingly, the Eleventh Circuit vacated the order of the district court insofar as that court dismissed plaintiffs' complaint for lack of standing and rendered judgment in favor of the election officials of Georgia.[5] Id. at 1357. The United States Supreme Court unanimously denied certiorari. *NAACP v. Billups*, ___ U. S. ___ (129 SC 2770, 174 LE2d 271) (2009).

On May 23, 2008, appellant filed a complaint for declaratory and injunctive relief in the Superior Court of Fulton County. The complaint, which is the subject of this appeal, alleges (1) that the photo ID requirement of the 2006 Act violates Art. II, Sec. I, Pars. II and III of the Georgia Constitution in that it imposes an unauthorized condition and qualification on the fundamental right of registered Georgia voters to vote, and (2) that it denies equal protection of the law under Art. I, Sec. I, Par. II of the Georgia Constitution by unduly burdening the right to vote. Thereafter, appellant sought a temporary restraining order in the trial court against application of the 2006 Act in the July 2008 primary election, asserting a violation of Art. II, Sec. I, Pars. II and III. After hearing evidence and balancing the harms, the trial court found that appellant failed to meet the applicable standards for the grant of a TRO, and it denied the requested relief. A few months later, appellant sought an interlocutory injunction against application of the 2006 Act in the November 2008 general election on the same grounds, as well as a claim that the 2006 Act violates equal protection under the Georgia

---

[5] A separate award of attorney fees, not relevant to this appeal, was also affirmed by the Eleventh Circuit. Id. at 1357.

Constitution. The trial court again concluded that appellant did not meet the applicable legal standard. An appeal was filed in this Court. Following briefing, appellant moved to withdraw its appeal, which motion was granted. Case No. S09A0201, withdrawn December 12, 2008.

Upon return of the case to the trial court, appellees filed a motion for summary judgment with respect to the entire complaint, and appellant filed a cross-motion for summary judgment as to its Art. II, Sec. I, Pars. II and III claim. After reviewing the evidence in accordance with the burdens placed on the respective movants, the trial court determined the 2006 Act does not violate Art. II, Sec. I, Pars. II and III of the Georgia Constitution, by imposing a new condition or qualification on the right to vote. The court also ruled that the 2006 Act does not violate Georgia's equal protection clause as it "is an 'evenhanded restriction' designed to protect the 'integrity and reliability of the electoral process' "; and that it is reasonable, narrowly tailored, and related to the legitimate State interest of preventing voter fraud. The court thus granted appellees' motion for summary judgment, and denied appellant's cross-motion.

1. In challenging the trial court's rulings on the respective motions for summary judgment, appellant first contends the photo ID requirement of the 2006 Act violates Art. II, Sec. I, Pars. II and III of the Georgia Constitution by unconstitutionally imposing a new qualification or condition on the right to vote in Georgia.

(a) Art. II, Sec. I, Par. II provides:

> Every person who is a citizen of the United States and a resident of Georgia as defined by law, who is at least 18 years of age and not disenfranchised by this article, and who meets minimum residency requirements as provided by law shall be entitled to vote at any election by the people. The General Assembly shall provide by law for the registration of electors.

In support of its position, appellant argues that where the qualifications to vote are expressly stated in the Constitution, those qualifications are exclusive and neither the legislature nor congress may add to or subtract from them. Appellant further posits that the role of the legislature in regulating voting is limited to establishing "minimum residency requirements" and providing for the registration of electors, id., and that in enacting OCGA § 21-2-417 (a), the General Assembly exceeded the authority granted to it under the

Georgia Constitution.[6]

Although the right to vote guaranteed by our Constitution cannot be "absolutely denied or taken away by legislative enactment, the legislature has the right to prescribe reasonable regulations as to how these qualifications shall be determined." *Franklin v. Harper*, 205 Ga. 779, 789 (3) (55 SE2d 221) (1949) (upholding the constitutionality of the Voters' Registration Act of 1949). "[T]he legislature cannot take from or add to the qualification unless the power is granted expressly or by necessary implication." Id. at 790 (3). Indeed, our Constitution specifically authorizes the legislature to enact laws regulating the election process. Art. II, Sec. I, Par. I ("Elections by the people shall be by secret ballot and shall be conducted in accordance with procedures provided by law"). It has long been acknowledged that the legislature has wide "latitude in determining how the qualifications required by the Constitution may be determined, provided it does not deny the right of franchise by making the exercise of such right so difficult or inconvenient as to amount to a denial of the right to vote." *Franklin*, supra at 790. See also *Griffin v. Trapp*, 205 Ga. 176, 181-182 (53 SE2d 92) (1949); *Stewart v. Cartwright*, 156 Ga. 192, 197 (118 SE 859) (1923).

The 2006 Act does not affect voter registration (for which no photo ID is required) nor does it condition the right to vote on presenting a photo ID, inasmuch as a registered voter may choose a manner of voting for which no photo ID is required. See *Common Cause/Ga. III*, 504 FSupp.2d at 1379. Therefore, we find that the photo ID requirement for in-person voting is authorized by Art. II,

---

[6] OCGA § 21-2-417 (a) provides:
    Except as provided in subsection (c) of this Code section, each elector shall present proper identification to a poll worker at or prior to completion of a voter's certificate at any polling place and prior to such person's admission to the enclosed space at such polling place. . . .
OCGA § 21-2-417 (a) (1) through (6) sets forth the forms of identification considered "proper" to identify the elector at the polling place.
OCGA § 21-2-417 (b) allows an elector who does not possess a proper form of identification at the poll to cast a provisional ballot, as follows:
    Except as provided in subsection (c) of this Code section, if an elector is unable to produce any of the items of identification listed in subsection (a) of this Code section, he or she shall be allowed to vote a provisional ballot pursuant to Code Section 21-2-418 upon swearing or affirming that the elector is the person identified in the elector's voter certificate. Such provisional ballot shall only be counted if the registrars are able to verify current and valid identification of the elector as provided in subsection (a) of this Code section within the time period for verifying provisional ballots pursuant to Code Section 21-2-419. Falsely swearing or affirming such statement under oath shall be punishable as a felony, and the penalty shall be distinctly set forth on the face of the statement.
OCGA § 21-2-417 (c) prescribes the type of identification sufficient to permit an individual voting for the first time in Georgia, and also allows for a provisional ballot if that individual does not have any form of identification listed in subsection (c).

Sec. I, Par. I, as a reasonable procedure for verifying that the individual appearing to vote in person is actually the same person who registered to vote.[7]

Nor do we find the photo ID requirement to be an impermissible qualification on voting. The 2006 Act does not deprive any Georgia voter from casting a ballot in any election. A registered voter who does not possess a photo ID and who desires to vote in person can obtain a free photo ID at one or more locations in the county of his or her residence. See OCGA § 21-2-417.1 (a).[8] This Court has held that requiring an additional step in the voting process in order to validate identity is not unconstitutional. See *Franklin*, supra at 792 (with regard to voter registration procedures). Alternatively, if a registered voter appears at the polls without a photo ID, that individual may still cast a provisional ballot and have the vote counted upon presentation of an acceptable photo ID within 48 hours. See OCGA § 21-2-417 (b).[9] Finally, an elector who does not wish to obtain a free photo ID can vote by absentee ballot by mail. See OCGA § 21-2-381 (a) (1) (C). While we recognize that absentee voting may be a fundamentally different process from in-person voting governed by distinct procedures, " '[u]nder Georgia law, every eligible voter in Georgia can make a decision to vote utilizing absentee ballots.' " *Favorito v. Handel*, 285 Ga. 795, 798 (684 SE2d 257) (2009). See OCGA § 21-2-380 (b).

Art. II, Sec. I, Par. II of the Georgia Constitution does not require that qualified citizens be allowed to vote in any particular manner.

---

[7] The Supreme Court of Indiana recently upheld a similar photo ID law on its own state constitutional grounds, holding that a photo ID requirement is not a substantive qualification to the right to vote, but "merely regulatory in nature . . . [and] [r]equiring qualified voters to present a specified form of identification . . . functions merely as an election regulation to verify the voter's identity." *League of Women Voters of Indiana v. Rokita*, 929 NE2d 758, 767 (Ind. 2010).

[8] OCGA § 21-2-417.1 (a) provides:

Each county board of registrars shall provide at least one place in the county at which it shall accept applications for and issue Georgia voter identification cards to registered Georgia electors which shall under state law be valid only for purposes of voter identification under Code Section 21-2-417 and available only to registered electors of this state. No fee shall be charged or collected for the application for or issuance of a Georgia voter identification card.

Subsection (c) sets forth the information to be contained in such Georgia voter identification card. The remainder of the statute (subsections (d) through (h)), further prescribe the procedures to be followed in applying for and issuing the Georgia voter identification card.

[9] The Supreme Court of Florida in *AFL-CIO v. Hood*, 885 So2d 373 (Fla. 2004), considered the constitutionality of a similar provisional ballot provision under the Florida constitution, which grants the right to vote to each permanent resident over age 18 who is properly registered as provided by law. The court held that the provision "is a regulation of the voting process, not a qualification placed on the voter," id. at 376, and is authorized by Florida's constitutional provision which states that "elections shall . . . be regulated by law." The court concluded that the legislature may require a voter to comply with such "law as may be imposed upon him as a matter of policing" the election process. Id. at 374-375.

See *Wheeler v. Bd. of Trustees*, 200 Ga. 323, 334 (37 SE2d 322) (1946) ("The legislative branch of our government is charged with the duty of providing the manner of holding elections"). Instead, a qualified elector is guaranteed the fundamental right to vote provided he or she uses one of the procedures put forth by the legislature, assuming those procedures do not offend the constitution. Because all registered voters in Georgia have the option of voting in person or by absentee ballot, they are free to choose which set of procedures to follow. *Favorito*, supra.

(b) Appellant also argues that the 2006 Act violates Art. II, Sec. I, Par. III of the Georgia Constitution by making failure to present a photo ID at the polls, or within two days thereafter, a ground for denying a registered voter the right to vote.

Art. II, Sec. I, Par. III provides:

> (a) No person who has been convicted of a felony involving moral turpitude may register, remain registered, or vote except upon completion of the sentence.

> (b) No person who has been judicially determined to be mentally incompetent may register, remain registered, or vote unless the disability has been removed.

Specifically, appellant contends that Paragraph III creates an exclusive list of the grounds on which a citizen who is lawfully registered to vote may be refused a ballot.[10] As discussed previously, the General Assembly is authorized under Art. II, Sec. I, Par. I to adopt procedures for the conduct of elections, including methods by which voters must prove their identity. We conclude that no voter is disenfranchised by the 2006 Act, and the Act does not violate Art. II, Sec. I, Par. III of the Georgia Constitution.

2. Appellant's final contention is that the trial court erred in finding as a matter of law that the 2006 Act did not violate the equal protection clause of the Georgia Constitution, Art. I, Sec. I, Par. II.

---

[10] In support of its argument, Appellant analogizes to two federal cases involving attempts to impose term limits on and otherwise exclude qualified persons from serving in Congress. In *U. S. Term Limits, Inc. v. Thornton*, 514 U. S. 779 (115 SC 1842, 131 LE2d 881) (1995), the United States Supreme Court struck down a provision in the Arkansas Constitution imposing term limits on its United States Senators and Congresspersons on the ground that, "the qualifications for service in Congress set forth in the text of the Constitution are 'fixed,' at least in the sense that they may not be supplemented by Congress." Id. at 798. In *Powell v. McCormack*, 395 U. S. 486 (89 SC 1944, 23 LE2d 491) (1969), the Supreme Court held that the House of Representatives had no power to exclude from its membership any person who was duly elected by his constituents and who met requirements specified in the Constitution despite the power expressly granted to each House in U. S. Const. Art. 1, Sec. 5 to be the judge of the qualifications of its own members. *Powell*, 395 U. S. at 517, 550. These cases do not concern the right of individual voters to cast a ballot, and we do not find them persuasive in this context.

Appellant first alleges that in granting appellees' motion for summary judgment on the equal protection counts of the complaint, the trial court failed to independently evaluate the claims under the Georgia Constitution and instead adopted the holding of two federal cases that addressed equal protection challenges to two state voter photo ID laws under the United States Constitution. See *Crawford v. Marion County Election Bd.*, 553 U. S. 181 (128 SC 1610, 170 LE2d 574) (2008), upholding Indiana's photo ID statute, and *Common Cause/Ga. IV*, supra at 1355, upholding the Georgia Act. In addition, appellant alleges the Georgia Constitution provides greater protections under its equal protection clause than does the United States Constitution, and, therefore, Georgians should enjoy enhanced equal protection of their right to vote. Despite appellant's attempt to expand Georgia's equal protection clause, this Court has repeatedly stated that the Georgia clause is generally "coextensive" with and "substantially equivalent" to the federal equal protection clause, and that we apply them as one. E.g., *Smith v. State*, 283 Ga. 376, 377 (659 SE2d 380) (2008) (citing *Grissom v. Gleason*, 262 Ga. 374, 375-376 (418 SE2d 27) (1992)); *In the Interest of A. N.*, 281 Ga. 58, 62 (636 SE2d 496) (2006) (quoting *Nodvin v. State Bar of Ga.*, 273 Ga. 559, 559-560 (544 SE2d 142) (2001)); *Sears v. Dickerson*, 278 Ga. 900, 901 (607 SE2d 562) (2005); *McDaniel v. Thomas*, 248 Ga. 632, 638 (285 SE2d 156) (1981).[11] That this Court has recognized greater protection extended under the Georgia Constitution than under the federal constitution in a number of other areas is not relevant.[12] We thus find applicable the test set forth by the United States Supreme Court in analyzing the voting laws of other states.

In *Anderson v. Celebrezze*, 460 U. S. 780 (103 SC 1564, 75 LE2d 547) (1983), the Supreme Court established a balancing test to determine the level of scrutiny to apply in evaluating a constitutional challenge to a state voting law. That test weighs

the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments . . . [against] the precise interests put forward by the State as

---

[11] We also acknowledge this Court's statement in *Grissom*, 262 Ga. at 376, n. 1: "We do not foreclose the possibility that this court may interpret the equal protection clause in the Georgia Constitution to offer greater rights than the federal equal protection clause as interpreted by the United States Supreme Court"; however, we decline to do so here.

[12] See *State v. Miller*, 260 Ga. 669 (398 SE2d 547) (1990) (freedom of expression); *Green v. State*, 260 Ga. 625 (398 SE2d 360) (1990) (right against self-incrimination); *Fleming v. Zant*, 259 Ga. 687, 690 (386 SE2d 339) (1989) (guarantee against cruel and unusual punishment); *Colonial Pipeline Co. v. Brown*, 258 Ga. 115 (365 SE2d 827) (1988) (excessive fines); *D. B. v. Clarke County Bd. of Ed.*, 220 Ga. App. 330 (469 SE2d 438) (1996) (guarantee of a free education); *Powell v. State*, 270 Ga. 327, 331 (510 SE2d 18) (1998).

justifications for the burden imposed by its rule . . . consider[ing] the extent to which those interests make it necessary to burden the plaintiff's rights.

Id., 460 U. S. at 789. See also *Cox v. Barber*, 275 Ga. 415, 418 (568 SE2d 478) (2002) (applying the *Anderson* test to equal protection challenges to residency requirements of election candidates). The United States Supreme Court reaffirmed this "more flexible standard" in *Burdick v. Takushi*, 504 U. S. 428, 434 (112 SC 2059, 119 LE2d 245) (1992) and *Crawford*, supra, 553 U. S. at 189-191. Under this standard, a regulation that imposes a "severe" burden on the rights of voters must be " 'narrowly drawn to advance a state interest of compelling importance,' " *Burdick*, 504 U. S. at 434, but "reasonable, nondiscriminatory restrictions" that impose a minimal burden may be warranted by "the State's important regulatory interests." *Anderson*, supra, 460 U. S. at 788.

We apply the balancing test set forth in *Anderson*, supra, 460 U. S. at 789. As justification for the burden imposed in requiring a photo ID for in-person voting, appellees have identified the State's interest of assuring that only those persons who are lawfully registered to vote may do so and eliminating the potential for voter fraud at the polls. "There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters." *Crawford*, supra, 553 U. S. at 196. We agree with the Eleventh Circuit in *Common Cause/Ga. IV*, supra, that the prevention of voter fraud is an important regulatory interest. "Georgia has an interest in preventing election fraud that 'provides a sufficient justification for carefully identifying all voters participating in the election process.' " *Common Cause/Ga. IV*, supra at 1353.

Next, "[t]he legitimate interest of Georgia in detecting and deterring voter fraud must be weighed against the burden of requiring photo identification to determine whether the interest is 'sufficiently weighty to justify the limitation.' " Id. at 1354, quoting *Crawford*, 553 U. S. at 190. To establish the extent of the burden, appellant relies on testimony from one voter who did not possess a statutorily authorized photo ID and because of age and physical infirmities could not travel without great difficulty to her local county office to obtain a free voter identification card (notably, these infirmities also limited her ability to get to her place of voting). Nonetheless, that individual was not prevented from voting as she subsequently voted an absentee ballot in the elections in issue.

In contrast, appellees submitted evidence that the State embarked on a comprehensive education program beginning in 2007 to inform election officials, poll workers, and voters about the photo ID requirement for in-person voters; that the law has been implemented

in 15 elections during 2007 and 2008 without problems and voter turnout has not been suppressed.

As did virtually every other court that considered this issue, we find the photo ID requirement as implemented in the 2006 Act to be a minimal, reasonable, and nondiscriminatory restriction which is warranted by the important regulatory interests of preventing voter fraud. See e.g., *Common Cause/Ga. IV*, supra at 1354-1355; *Crawford*, supra, 553 U. S. at 204. Of further significance is the Supreme Court's *Crawford* decision. The *Crawford* Court upheld on federal equal protection grounds a more restrictive Indiana law requiring in-person voters to produce photo ID. Interestingly, the dissenters in *Crawford*, who would find the Indiana law unconstitutional under the balancing standard of *Burdick*, supra, contrasted the Indiana law with the less restrictive 2006 Georgia Act, noting that "Indiana's requirement imposes a significantly harsher, unjustified burden," than does Georgia, but declining to determine the constitutionality of the Georgia law because the matter was not before the Court. *Crawford*, supra, 553 U. S. at 240 (Souter, J., dissenting).

"[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' . . . 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, supra, 504 U. S. at 434 (quoting *Anderson*, 460 U. S. at 788). Accordingly, the trial court properly discharged its obligation by reviewing the evidence in accordance with the burdens placed on each respective movant and correctly declined to find that the 2006 Act violates Georgia's equal protection clause.

*Judgment affirmed. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting.

Here in the first paragraph of the Declaration [of Independence], is the assertion of the natural right of all to the ballot; for how can "the consent of the governed" be given, if the right to vote be denied?
— Susan B. Anthony (1873).

This country has a long history of denying the franchise to certain groups of citizens — non-property owners, members of certain religions, African-Americans, women, Native Americans, young adults aged 18 to 21, etc.[13] It is unfortunate that over the

---

[13] "Universal suffrage is one of the cherished conceits of modern American democracy. When the nation was founded, almost the only people who could vote were free white male

course of the last 13 years, this State has placed ever increasing restrictions on its citizens' ability to cast regular, non-provisional ballots at their local polling precincts. While requiring the presentation of government-issued photographic identification may seem reasonable in the Twenty-First Century, such qualification is not in fact reasonable. Citizens at the margins of our society (i.e., the poor, infirm, and elderly) are still effectively being disenfranchised in the name of the government's purported interest in preventing voting frauds that have not been proven to occur at any rate of significance. As such, I must respectfully disagree with the majority opinion in this case.

Prior to 1998, Georgia citizens who were registered voters were not required to show identification, photographic or otherwise, in order to cast a regular ballot at their local polling precincts. As long as a citizen's name appeared on the polling precinct's register, the citizen was allowed to cast his or her ballot as he or she saw fit. After 1998 and prior to 2006, the General Assembly changed the law, requiring citizens to show one of seventeen forms of identification,[14] both photographic and non-photographic, in order to cast a regular ballot at his or her polling precinct. If the citizen did not have one of the seventeen forms of identification, he or she could still cast a regular ballot upon signing an affidavit swearing to his or her identity, subject to a felony conviction for a false swearing. OCGA § 21-2-417 (b) (2005).

With the passage of the 2006 Photo ID Act, the General

---

property owners over the age of twenty-one." Laughlin McDonald, "A Voting Rights Odyssey: Black Enfranchisement in Georgia," pp. 1-2 (Cambridge Press 2003). For U. S. Supreme Court decisions concerning voting rights in Georgia during the Civil Rights Era see also *Gray v. Sanders*, 372 U. S. 368 (83 SC 801, 9 LE2d 821) (1963); *Wesberry v. Sanders*, 376 U. S. 1 (84 SC 526, 11 LE2d 526) (1964); *Fortson v. Dorsey*, 379 U. S. 433 (85 SC 498, 13 LE2d 401) (1965).

[14] The seventeen forms of identification included: A valid Georgia driver's license; a valid identification card issued by a branch, department, agency, or entity of the State of Georgia, any other state, or the United States authorized by law to issue personal identification; a valid United States passport; a valid employee identification card containing a photograph of the elector and issued by any branch, department, agency, or entity of the United States government, this state, or any county, municipality, board, authority, or other entity of this state; a valid employee identification card containing a photograph of the elector and issued by any employer of the elector in the ordinary course of such employer's business; a valid student identification card containing a photograph of the elector from any public or private college, university, or postgraduate technical or professional school located within the State of Georgia; a valid Georgia license to carry a pistol or revolver; a valid pilot's license issued by the Federal Aviation Administration or other authorized agency of the United States; a valid United States military identification card; a certified copy of the elector's birth certificate; a valid social security card; certified naturalization documentation; or a certified copy of court records showing adoption, name, or sex change; a current utility bill, or a legible copy thereof, showing the name and address of the elector; a bank statement, or a legible copy thereof, showing the name and address of the elector; a government check or paycheck, or a legible copy thereof, showing the name and address of the elector; or a government document, or a legible copy thereof, showing the name and address of the elector. OCGA § 21-2-417 (a) (2005).

Assembly has further constricted a citizen's ability to cast a regular ballot at his or her polling precinct upon the showing of one of six forms of government-issued photographic identification.[15] If a citizen fails to present any one of the six forms of government-issued photographic identification, then he or she is not allowed to cast a regular ballot. Instead, the citizen must cast a provisional ballot at the precinct and then the county registrar must determine within three days whether the citizen is eligible to vote. OCGA §§ 21-2-417 (b) (2011); 21-2-419 (2011). If the registrar fails to meet the deadline for any reason or is otherwise unable to determine the citizen's eligibility to vote, then the citizen's ballot is not counted. Id.

> [T]he legislature has a wide latitude in determining how qualifications required by the Constitution may be determined, provided it does not deny the right of franchise by making the exercise of such right so difficult or inconvenient as to amount to a denial of the right to vote.

*Franklin v. Harper*, 205 Ga. 779, 790 (55 SE2d 221) (1949). Here the majority contends that citizens are not burdened by the 2006 Voter ID Act because a citizen may obtain a voter identification card "free of charge." However, obtaining the "free" voter identification card is actually more burdensome than registering to vote. In order to obtain a voter identification card, a citizen cannot merely show that he or she is listed in the voter registry, but must provide: "[a] photo identity document[16] or approved non-photo identity document[17] that includes full legal name and date of birth; [d]ocumentation showing

---

[15] The six valid forms of government-issued photographic identification include: a Georgia driver's license which was properly issued by the appropriate state agency; a valid Georgia voter identification card or other valid identification card issued by a branch, department, agency, or entity of the State of Georgia, any other state, or the United States authorized by law to issue personal identification, provided that such identification card contains a photograph of the elector; a valid United States passport; a valid employee identification card containing a photograph of the elector and issued by any branch, department, agency, or entity of the United States government, this state, or any county, municipality, board, authority, or other entity of this state; a valid United States military identification card, provided that such identification card contains a photograph of the elector; or a valid tribal identification card containing a photograph of the elector. OCGA § 21-2-417 (a) (2011).

[16] Photo identity documents include: student identification card; transit card; pilot's license; nursing home identification card; employee identification card; government housing authority identification card; any government issued license; any card accepted by local, state or federal government for the provision of benefits; any card accepted by local, state or federal government for access to buildings. (http://www.sos.ga.gov/Gaphotoid/FAQ.html)

[17] Non-photo identity documents include: an original birth certificate or certified copy of a birth certificate; certificate of birth registration; voter registration application; copy of records filed in a court by the applicant or on behalf of the applicant by the applicant's counsel; naturalization documentation; copy of marriage license application; a copy of the applicant's state or federal tax return filed for the previous calendar year; any other document issued by

the voter's date of birth; [e]vidence that the applicant is a registered voter; [and] [d]ocumentation showing the applicant's name and residential address."[18] If a citizen goes to the Department of Driver Services to obtain his or her voter identification card, rather than to his or her county registrar, he or she must provide proof of citizenship, present original and certified documentation (rather than copies), and provide an affidavit. In contrast, it is less rigorous to register to vote because a citizen need only fill out the voter registration form and submit a copy of a valid photo ID, a copy of a current utility bill, bank statement, government check, paycheck *or* other government document that shows the citizen's name or address.[19]

Whereas before 2006, a registered voter without photographic identification could simply show up at his or her polling precinct with a copy of a current utility bill and be allowed to cast a regular ballot, he or she must now collect (and likely pay fees for) a plethora of original documentation (most of which is not required to register to vote in the first instance), incur the time and expense to make a trip to the county registrar or Department of Driver Services (which may or not be as close as his or her polling precinct), and then make a second trip to the polling place to vote on election day. Thus, it is clear that the "free" voter identification card, and the movement toward a singular system of photographic identification for in-person voting in general, is an unnecessary construct making the ability to vote more burdensome for persons who are poor, infirm, or elderly. Such inconvenient and difficult impediments to exercising the franchise are in express contradiction of *Franklin v. Harper*.

The option to vote by absentee ballot does not mitigate the inconveniences and difficulties described above. While having such an option may aid some citizens, especially those who are physically immobile, voting by absentee ballot is not the ideal. Indeed, there is an inherent First Amendment interest that is coupled with exercising the franchise — the right to be among one's fellow citizens at the polling precinct and to openly exercise his or her right to participate in a democracy. The fact that one does not have the where-with-all to

---

local, state, or federal government so long as the document provides a reasonably reliable confirmation of the identity of the applicant; paycheck or paycheck stub bearing the imprinted name of the applicant's employer; an original of the annual social security statement received by the applicant for the current or preceding year; an original of a Medicare or Medicaid statement received by the applicant; certified school record or transcript for the current or preceding year; hospital birth certificate; an authenticated copy of a doctor's record of post-natal care; a federal affidavit of birth, form DS-10. (http://www.sos.ga.gov/Gaphotoid/FAQ.html)

[18] http://www.sos.ga.gov/Gaphotoid/
[19] http://www.sos.georgia.gov/elections/vrinfo.htm

obtain a government-issued photographic identification should not relegate him or her to casting his or her ballot in secret and in absentia. Accordingly, I would reverse the judgment of the trial court.

DECIDED MARCH 7, 2011.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, David G. Brackett, James J. Carter*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, Stefan E. Ritter, Assistant Attorney General, Troutman Sanders, Mark H. Cohen, Strickland, Brockington & Lewis, Anne W. Lewis*, for appellees.